UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

    -v-                                                                 1:09-CR-507

BALDEO SAHABIR and KAMLA SAHABIR,

              Petitioner-defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

BALDEO SAHABIR, Pro se
15736-052
D. Ray James Correctional Facility
P.O. Box 2000
Folkston, GA 31537

KAMLA SAHABIR, Pro se
15737-052
Alderson Federal Prison Camp
Glen Ray Road Box A
Alderson, WV 24910

HON. RICHARD S. HARTUNIAN          EDWARD R. BROTON, ESQ.
United States Attorney                   GWENDOLYN E. CARROLL, ESQ.
Northern District of New York        Asst. United States Attorneys
100 South Clinton Street
P.O. Box 7198
Syracuse, NY  13261

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

    Petitioners Baldeo Sahabir ("Baldeo") and Kamla Sahabir ("Kamla") (collectively "petitioners"), move pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct the imposed

sentences. They also move for discovery, an evidentiary hearing, and appointment of counsel. The United States of America ("the Government") opposes. Petitioners reply with permission. The motions were considered without oral argument.

## II. BACKGROUND

On September 23, 2009, the Government filed an indictment charging the petitioners with conspiracy to commit money laundering (Count One) with each other and other persons, including Lal Singh ("Singh"), to defraud the Bank of New York by transferring unclaimed funds to outside accounts for distribution. They were also charged with substantive money laundering (Count Two), and eight counts (Counts Three through Ten) of aiding and abetting a scheme to defraud a federally insured bank. These activities took place from 2001 until 2007.

Trial began on August 16, 2010, and on August 19, 2010, the jury returned verdicts convicting Baldeo of Counts One through Ten and Kamla of Counts One, Two, Six, Seven, Eight, Nine, and Ten. On December 20, 2010, judgment was entered. Baldeo was sentenced principally to a term of imprisonment of 60 months and Kamla was sentenced to 36 months. Both were ordered to pay restitution.

Among their other posttrial filings, on December 28, 2010, the petitioners filed notices of appeal with the Second Circuit, which they later voluntarily withdrew. Additionally, on January 20, 2011, Baldeo filed an emergency motion seeking an order to show cause requesting a new trial and stay of incarceration. Kamla joined the motion that same day. The motion was premised on two affidavits, containing testimony from Urmella Ramotar and Shareeza Alli, stating that Singh had said he had framed the petitioners, they were not a part

of the money laundering scam, and that he had lied to save himself and his family. Mot. Ex. A., Ramotar Aff. at 1:7–22; Mot. Ex. B., Alli Aff. at 1:9–15. The motion was denied.

## III. DISCUSSION

### A. Motions to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255

A prisoner may challenge his sentence on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C.A. § 2255(a) (West 2006).

The petitioners assert that they were denied the effective assistance of counsel, that there has been a new or intervening change in the law that renders their confinement unconstitutional, and that new evidence has surfaced which merits a reduction in their sentences.

#### 1. Ineffective Assistance of Counsel

Petitioners argue that they were denied the effective assistance of counsel in violation of the Sixth Amendment.[1] In order to establish ineffective assistance of counsel, they must show that: (1) their attorneys' performances were objectively unreasonable and (2) they were prejudiced by their attorneys' sub-standard representations; that is, they "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694,

---

[1] At trial, Baldeo was represented by retained counsel Stephen R. Coffey, Esq., a founding partner of the personal injury and criminal defense practice at the firm of O'Connell and Aronowitz. Kamla was represented at trial by retained counsel E. Stewart Jones, Jr., Esq., of the E. Stewart Jones Law Firm, PLLC.

104 S. Ct. 2052, 2068 (1984); see also Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009) (citing Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008)). In considering the first prong, there is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). With respect to the prejudice prong, "a 'reasonable probability' of a different result is a 'probability sufficient to undermine confidence in the outcome.'" Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

Addressing the first prong of the Strickland test, petitioners assert that counsels' performances were objectively unreasonable because they failed to argue United States v. Santos, 553 U.S. 507, 128 S. Ct. 2020 (2008). Petitioners maintain that had their attorneys argued Santos, they would have received a lesser sentence or been acquitted.[2]

---

[2] The federal money laundering statute was amended to define proceeds as gross receipts, effectively overruling Santos. See 18 U.S.C. § 1956(c)(9); Pub. L. No. 111–21, § (2)(f)(1) (May 20, 2009). It must be determined whether the amended statute or the previous statute as interpreted by case law (including Santos) applies in this case.

The ex post facto clause prohibits legislatures from retroactively altering the definition of a crime or increasing the punishment for it. See Collins v. Youngblood, 497 U.S. 37, 43, 110 S. Ct. 2715, 2719 (1990). When a prisoner relies on Santos to challenge his sentence, the amendments to the federal money laundering statute that superseded Santos will be disregarded if the criminal acts occurred before the amendments were enacted. See United States v. Nathan, No. CRIM.A.H-05-226-7, 2012 WL 28604, at *22 n.2 (S.D. Tex. Jan. 4, 2012) ("Santos has been superseded. This amendment does not apply to the instant action, which must be decided under the old statute and Santos.").

The petitioners were convicted for criminal acts that took place between December 18, 2001, and May 23, 2007. Indictment 6. The amendments to the federal money laundering statute that superseded Santos were enacted and became effective on May 20, 2009. Section 1956(c)(9). Because the petitioners' criminal acts occurred before the federal money laundering statute was amended, only the old statute and Santos, if applicable, are relevant to their motions to vacate, set aside or reduce their sentences.

The federal money laundering statute applicable in this case made it illegal to conduct a financial transaction, knowing that the property involved represented the proceeds of illegal

activity, while intending to promote the "carrying on" of that activity. 18 U.S.C.A. § 1956(a)(1)(A)(i) (West 2006). The term "proceeds" in the statute had been left undefined by Congress, but had been interpreted broadly to include gross receipts and not simply profits. Santos, 553 U.S. at 511–13, 128 S. Ct. at 2024–25.

In Santos, the defendant ran an illegal gambling operation and paid its expenses, making payments to runners, collectors, and winners. Id. at 509, 128 S. Ct. at 2023. Each payment of an expense invoked illegal gambling laws, and under the expansive definition of proceeds, also invoked the federal money laundering statute. Id. at 509–10, 128 S. Ct. at 2023. Thus, Santos was convicted on charges relating to running an illegal gambling business, and also of conspiracy to launder money and substantive money laundering, based upon the same acts. Id. at 509–10, 128 S. Ct. at 2023.

A plurality of the Supreme Court determined that this created a merger issue, in that if the term proceeds were interpreted to include receipts, any defendant who operated an illegal gambling operation and paid its expenses would invariably also commit money laundering. Id. at 515, 128 S. Ct. at 2026. To prevent this merger issue, the plurality determined that proceeds, as used in the federal money laundering statute, should be interpreted to mean profits. See id. at 523, 128 S. Ct. at 2031.

However, because there was no majority opinion from the Court, Santos is limited by Justice Stevens' concurrence, which applied the new definition of proceeds only to situations involving illegal gambling operations. See id. at 525–28, 128 S. Ct. at 2032–33 (Stevens, J., concurring). Thus, Santos has been applied narrowly. See United States v. Quinones, 635 F.3d 590, 600 (2d Cir. 2011) (holding that the narrow definition of proceeds as profits does not apply where the underlying offense is the sale of controlled substances), cert. denied, __

U.S. __, 132 S. Ct. 830 (2011); Gotti v. United States, No. 08-CV-2664 (FB), 2009 WL 197132, at *2 (E.D.N.Y. Jan. 28, 2009) ("Santos is limited to its facts . . . .").

Petitioners were convicted of conspiracy to commit money laundering of bank fraud proceeds, money laundering, and numerous counts of aiding and abetting a scheme to defraud a federally insured bank.  Because none of these charges involved illegal gambling, Santos did not apply and it would have been futile to make a Santos argument.  Therefore, it was reasonable and proper that petitioners' experienced trial counsel did not argue Santos.

Moving on to the second prong of the Strickland test, had Santos been argued at trial, there is no reasonable probability that the result would have been different because the rule it announced does not apply to the charges against the petitioners—money laundering involving bank fraud.  Because confidence in the outcome of the proceedings has not been undermined, no prejudice has been shown.[3]

As the counsel received was neither objectively unreasonable nor prejudicial, the petitioners' ineffective assistance of counsel argument is without merit.  For the same reasons as above, their argument that Santos established a new or intervening rule of law which renders their confinement unconstitutional is also without merit.

## 2. New Evidence to Mitigate the Sentences

Petitioners argue that new evidence has come to light which merits a reduction in their sentences.  New evidence that warrants relief "'is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered

---

[3] Petitioners' voluntary withdrawal of their direct appeals further indicates that the outcome of the proceedings was proper.

sooner.'" Moreno-Ortiz v. United States, 983 F.2d 15, 16 (2d Cir. 1993) (quoting Giacalone v. United States, 739 F.2d 40, 43 (2d Cir. 1984)). Further, "the evidence must be 'material, not cumulative, and . . . probably lead to an acquittal.'" Id. at 16–17 (quoting United States v. Alessi, 638 F.2d 466, 479 (2d Cir. 1980)). New impeachment evidence is immaterial if it "'merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.'" United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996) (quoting United States v. Payne, 63 F. 3d 1200, 1210 (2d Cir. 1995)).

The new evidence must also have been admissible at trial. Dalli v. United States, 491 F.2d 758, 760 (2d Cir. 1974) (collecting cases). Hearsay statements will not suffice. Id. Hearsay is any out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Affidavits containing hearsay are consistently rejected as insufficient to support a § 2255 motion. See Dalli, 491 F.2d at 761 (a police officers' affidavit stating that he had learned of a common practice that contradicted his trial testimony was hearsay); LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005) (an affidavit from a third party alleging that the petitioner's trial attorney had received death threats, preventing him from pursuing certain lines of cross-examination at trial, was hearsay).

At trial, Singh testified that Kamla had initiated the money laundering scheme by suggesting that he take money from the Bank of New York's unclaimed funds account and transfer it to someone she knew, who would keep twenty percent, and that they would split the remainder evenly. Tr. Vol. One 79:4–80:6. He went on to give detailed testimony describing both petitioners' involvement in the scheme. Id. 80:6–144:2. On cross-examination, his credibility was extensively challenged by the petitioners' attorneys. Id.

144–232. It was made clear to the jury that he was testifying pursuant to his own plea agreement on conspiracy charges. Id. 71:23–72:8. His version of events was also contradicted by testimony given by Baldeo on direct examination. Tr. Vol. Three 9–75.

The petitioners' purported new evidence consists of two affidavits containing testimony from Urmella Ramotar and Shareeza Alli. In the affidavit dated January 12, 2011, Urmella Ramotar stated that a year and a half prior, she overheard Singh tell a stranger that he had framed the petitioners. Mot. Ex. A., Ramotar Aff. at 1:7–22. In the affidavit dated December 8, 2010, Shareeza Alli stated that a year prior, Singh told him that "Kamla or Baldeo were not part of his money laundering scam . . . he had lied to authorities to save himself, his brothers, and other family members." Mot. Ex. B., Alli Aff. at 1:9–15.

In support of their § 2255 motions, petitioners assert that the testimony in the affidavits "supports the previously submitted theory that [they] were used as conduit[s]." Mem. 9:11–12. Used in this way, the testimony is hearsay, because it offers Singh's out-of-court statements that the petitioners were "not a part of the money laundering scam" to prove that they, in fact, were not a part of the scam. Therefore, the testimony in the affidavits is not sufficient to warrant relief under § 2255.

Alternatively, however, petitioners could have offered this testimony to challenge Singh's credibility at trial. Used in this way, the testimony would not be hearsay, because it would have been offered to challenge Singh's credibility. That is, Singh's out-of-court statements that the petitioners were "not a part of the money laundering scam" would have directly contradicted his testimony at trial that the petitioners were integral to his scheme, thus calling into question his credibility. Thus, this testimony, if offered to impeach Singh's credibility, would have been admissible at trial.

Although this testimony would have been admissible as impeachment evidence, the petitioners have offered no reason why the witnesses could not, with due diligence, have been contacted for trial. Petitioners had known Urmella Ramotar for several years. Mot. Ex. A., Ramotar Aff. at 1:14–15. Kamla had known Shareeza Alli since 2007. Mot. Ex. B., Alli. Aff. at 1:24. Both affiants also knew Lal Singh. Mot. Ex. A., Ramotar Aff. at 1:10–14; Mot. Ex. B., Alli. Aff. at 1:21–22. Petitioners' experienced trial counsel would no doubt have contacted acquaintances in the community to discover the evidence now being offered, had petitioners made them aware of these acquaintances. The fact that the affiants gave statements within weeks of judgment being entered demonstrates that they would not have been difficult to find before or during trial. Because Urmella Ramotar and Shareeza Alli could have, with due diligence, been contacted sooner, their testimony cannot be considered new evidence.

Although the testimony in the affidavits could have impeached Singh's credibility if offered at trial, it would have only added to the substantial impeachment that had already occurred. It was well known to the jury that Singh was testifying pursuant to his plea agreement with the Government, and his credibility was extensively challenged on cross examination and contradicted by other witnesses. By the petitioners' own admission, "Singh's inconsistencies were quite visible at trial." Reply 3:19–20. Moreover, there was a great deal of other evidence to support a conviction, including bank and travel records, testimony from a certified fraud examiner, and testimony from four other witnesses. The affiants' testimony would have merely furnished an additional basis to impeach Singh's credibility at trial. It would not have resulted in an acquittal. Therefore, the testimony is immaterial and cumulative.

The petitioners' assertion that they received ineffective assistance of counsel is without merit. Moreover, the affidavits they produced do not constitute new evidence, are immaterial, and cumulative. Thus, they do not merit a reduction in the sentences.

### B.  Motion for an Evidentiary Hearing, Discovery, and Appointment of Counsel

Petitioners move for discovery, an evidentiary hearing, and appointment of counsel. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255(b). "[A]n evidentiary hearing is required on a Section 2255 motion only when the papers on the motion, measured by the same standards of competence and admissibility applicable to motions for summary judgment, reveal the existence of a genuine issue of material fact." Lamberti v. United States, 22 F. Supp. 2d 60, 71 (S.D.N.Y. 1998) (citing United States v. Aiello, 814 F.2d 109 (2d Cir. 1987)), aff'd, 201 F.3d 430 (2d Cir. 1999). An evidentiary hearing is not required "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970) (collecting cases). An evidentiary hearing will not be justified unless there is "some promise at least of helpful testimony hitherto unknown . . . ." United States v. Gernie, 287 F.2d 637, 638 (2d Cir. 1961).

The papers on this motion have not revealed a genuine issue of material fact. Petitioners' ineffective assistance of counsel argument is without merit because, as discussed, the rule announced in Santos only applied to money laundering involving illegal gambling, and counsel's failure to argue it was neither objectively unreasonable nor prejudicial. For the same reason, the petitioners' argument that Santos established a new or intervening rule of law which renders their confinement unconstitutional is also without merit.

The testimony in the affidavits could have been discovered, with due diligence, before trial, and would have merely furnished an additional basis on which to impeach Singh's credibility. Therefore, the testimony in the affidavits is not new evidence, is immaterial, and cumulative. No promise of helpful testimony, hitherto unknown, has been shown. Thus, the motion, files and records of this case conclusively show that the petitioners are entitled to no relief, and their motions for an evidentiary hearing, discovery and appointment of counsel will be denied.

## IV. CERTIFICATES OF APPEALABILITY

To appeal this order, petitioners must first obtain Certificates of Appealability. See 28 U.S.C.A. § 2253(c) (West 2006). Such a certificate will only be issued so long as "the applicant has made a substantial showing of the denial of a constitutional right." Id. Having failed to make any showing that they were denied any of their constitutional rights, petitioners will not be issued Certificates of Appealability.

## V. CONCLUSION

Petitioners' claims that they received ineffective assistance of counsel are without merit as the assistance received was neither objectively unreasonable nor prejudicial. The rule announced in Santos did not apply to the types of offenses of which the petitioners were charged and convicted. The purported new evidence is immaterial, cumulative, and could have been discovered for trial. Finally, the papers on the motion do not reveal the existence of a genuine issue of material fact, and there has been no promise of the discovery of previously unknown helpful testimony.

Accordingly, it is ORDERED that:

1. Petitioners' motions to vacate, set aside, or correct their sentences pursuant to 28 U.S.C. § 2255 are denied;

2.  Petitioners' motions for discovery, an evidentiary hearing, and appointment of counsel are denied; and

3.  Certificates of Appealability will not be issued in this matter.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 26, 2012
       Utica, New York.